UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VANESSA HOLLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-1726 (ABJ) |
| | ) | |
| HOWARD UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on defendant Howard University's Motion to Dismiss [Dkt. 9]. For the reasons discussed below, the motion will be granted.

I. BACKGROUND

On August 31, 2015, plaintiff filed the instant complaint against Howard University and a number of individuals associated with it, alleging that the University "has denied her readmission twice to complete [her] PhD in History." Compl. [Dkt. 1] at 2; *see also id*. at 12 (Letter from Constance M. Ellison, Associate Dean for Educational and Research Affairs, Howard University, dated January 13, 2014).[1] Plaintiff states that she is "seeking a settlement of $300,000 . . . for slander, defamation of character, and pain and suffering for emotional distress," *id*. at 4, but in the

---

[1] Plaintiff attaches several unnumbered exhibits to her complaint, and the Court will refer to them by the page numbers designated by ECF.

1

"relief" section of the complaint, she declares: "I am asking the court for my Ph.D in History." *Id*. at 6.

According to the University, plaintiff began graduate studies in history in 2005. *See* Def. Howard Univ.'s Mem. of Law in Support of Mot. to Dismiss [Dkt. 9-1] ("Def.'s Mem.") at 2. Plaintiff supplied a copy of her unofficial transcript, and it reflects that she was last enrolled in the spring of 2010, when she received the grade of incomplete and earned no credit in two courses entitled "PhD Dissertation." Compl. at 19. Otherwise, she had a cumulative grade point average of 3.75. *Id.* But apparently, when plaintiff applied to return in 2014, she was unable to secure a professor who would serve as the faculty advisor overseeing her completion of the program. *See id.* at 3-4.

The complaint does not provide any information about plaintiff's departure from the University in 2010. Plaintiff posits that because she criticized and "burned a bridge" with her former advisor, Daryl Scott, at that time, he poisoned the well at the school when she applied to be readmitted in 2014 and 2015. *See id*. at 5. She expresses her fear that it was his personal vendetta that sank her applications. *See id*. at 3-5. ("Daryl Scott bad-mouthed me to the point where I would not have an advisor . . . . My being denied is based on my former advisor . . . getting back at me for criticizing him in 2010. . . . It's him being spiteful towards me . . . .").[2]

---

[2] Plaintiff's allegations are highly conclusory and speculative:

> In a private conversation, I believe the chair, Edna Medford, asked my former advisor, Daryl Scott, [if he] would . . . see me through completion if admitted, and he said, No. But, instead of having someone else advise me, it was most likely communicated: "Don't admit Vanessa at all. Deny her application and let her start all over somewhere else."

Compl. at 5.

2

The University moved to dismiss the complaint on behalf of all defendants pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. 9]. For purposes of its motion, the University presumed that plaintiff is seeking relief on the grounds that the denial of her applications for readmission to the graduate program in history violated Title IX of the Education Amendment Act of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"). Def's Mem. at 5.[3] It argued that the individual University employees are not proper defendants under Title IX, that the statute did not authorize the court to insinuate itself into purely academic decisions, and that plaintiff had not set forth any facts to support a claim of gender discrimination against the institution. *Id.* at 6-8. It also maintained that plaintiff's conclusory allegations were insufficient to state claims for slander, defamation or intentional infliction of emotional distress. *Id.* at 8-10.

Plaintiff opposes the motion with a "Response to Motion to Dismiss," [Dkt. 13] ("1st Resp."), an "Addendum to Response for Motion to Dismiss," [Dkt. 14] ("Addendum"), a "Response to Motion to Dismiss" [Dkt. 15] ("2nd Resp.") that is essentially the same as the "Addendum to Response for Motion to Dismiss" [Dkt. 16] ("3rd Resp."), and a "Final Statement to Oppose Dismissing My Case." [Dkt. 17] ("Final Stmt."). She provides more detail about her

---

[3] The exhibits attached to plaintiff's complaint indicate that she filed an administrative complaint with Office of Civil Rights at the U.S. Department of Education ("OCR") alleging that the University denied her readmission on the basis of her gender, and that she also wrote to her Senator and the President of the United States. Compl. at 7-11. OCR requested additional information, including an explanation of why she believed that the admissions decision was based on the fact that she was female, and it stated that a failure to provide the information could result in the dismissal of her complaint. *Id*. at 7-8. There is no indication that any further information was provided; plaintiff simply has alleged: "After hearing back from the U.S. Department of Education and the U.S. Congress pertaining to my case, both entities directed me to file this private law suit in federal court (see supporting documents)." *Id*. at 5. The University stated, "OCR never requested any information from the University, and never issued any findings in the matter." Def.'s Mem. at 3.

3

dispute with the University and makes it quite clear that the primary relief she is seeking in this action is the award of her doctorate degree:

> . . . I sincerely thank the court for helping me to obtain my PhD in History from Howard University because I have earned it. I have **ALWAYS WANTED** my degree from Howard University. My **deceased mother, an Ed.D. graduate of Syracuse University**, would be proud of me, so would my soon-to-be five year old son.

1st Resp. at 5 (emphasis in original); *see also* 2nd Resp. at 5.

> Thank you for allowing me to add this addendum to my response to **OPPOSE** dismissing this case. This is **INDEED** a case. What Daryl Scott did to me was **WRONG**. I have **earned my PhD in History**. I need my degree conferred and I thank the court for **NOT DISMISSING THIS CASE**, which would **CONDONE** what Daryl Scott did to me.

Addendum at 4 (emphasis in original). These submissions also include additional factual allegations.

Plaintiff notes that in 2014, the letter denying her readmission stated that the decision was "based on [her] credentials," but that "[i]n 2015, the denial letter read: 'lack of progress and possible plagiarism." 1st Resp. at 1. Plaintiff does not supply any context for the plagiarism allegation, but she does not deny it. Instead she states:

> Daryl Scott, my former advisor, knew about it and **CHOSE NOT TO** submit my work for possible plagiarism in 2010 (last semester I was enrolled) . . . . Instead of following procedure, Daryl Scott **CHOSE TO** give me an incomplete grade on my transcript . . . .

*Id.* at 1-2 (emphasis in original); *see also* Addendum at 2 ("I was **confronted** with plagiarism by Edna Medford over the phone when I inquired [about] readmission, so I was **honest**. Edna Medford and Daryl Scott knew about it . . . .") (emphasis in original). Plaintiff alleges that without her degree, she remains unable to secure an appointment at Medgar Evers College where she has been teaching for several years since. *See* Compl. at 5-6; Addendum at 2. Although she published

4

work since her departure from the University, but she does not indicate that she ever completed her dissertation. *See* 1st Resp. at 3-4.

Plaintiff maintains that the case is "personal." She states that in 2006, when she was still enrolled at the University, she began taking independent study, and moved out of the Washington, D.C. area. 1st. Resp. at 2. "Daryl Scott had no problem with this. [They] kept in touch." *Id.* Plaintiff alleges that she and Scott remained in contact without incident over the course of several moves over the next four years, including her move to New York City, where she got married. *Id.* Plaintiff states that she and her Daryl Scott "began having problems" when she emailed him in 2010 to inform him that she was pregnant. *Id.* at 3. "He emailed wishing [her] 'good luck' with [her] new baby boy and also stated, 'Our professional relationship is over." *Id.* According to plaintiff:

> **The truth is:** Daryl Scott and I were **CLOSE**. As his student, **he provided me** with his cell phone number and home number. Daryl Scott **emailed me from his personal** yahoo address and **NOT** his faculty email address. **He even responded** to me addressing him, **"Papa Scott,"** and not Dr. Scott or Professor Scott.
>
> I am trying to prove that Daryl Scott became **emotionally affected by my marriage and pregnancy . . . .**

*Id.* (emphasis in original); *see also* Addendum at 3 ("**Scott's motive for doing what he did was because HE LIKED ME and when I married and became pregnant, he washed his hands of me, somehow thinking I was more than a student to him.**") (emphasis in original).[4] In light of all of those circumstances, and since the University receives federal funding, plaintiff insists that she is entitled to both damages and the Ph.D. Final Statement at 2.

---

[4] Plaintiff observes that she "find[s] it fishy" that defendants' counsel graduated from Stanford Law School in the same year that Scott received a degree from Stanford. Addendum at 1. She rejects counsel's claim that she doesn't know Scott, and she objects to the fact that counsel is defending the University. *Id.* at 1-2. Plaintiff also repeats her suspicion that Scott is behind the admissions decision:

5

In its Reply to plaintiff's multiple filings, the University pointed out that the individual defendants had yet to be served, and it reiterated that plaintiff, who had now admitted being involved in some sort of academic dishonesty, had not stated an actionable claim under Title IX. *See* Def. Howard Univ.'s Reply in Resp. to Pl.'s Documents 13, 14, 15 16 17 and in Further Support of Def.'s Mot. to Dismiss [Dkt. 18] at 2, 4-5. It also argued that none of the pleadings filed in opposition to the motion to dismiss address the common law tort claims. *See id*. at 3.

II. DISCUSSION

The University moves to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. *See generally* Def.'s Mem. at 5-10. The plaintiff has filed five responses to the University's motion [Dkt. 13-17], and has yet to articulate a viable legal claim.

---

> After all, he is the one who is responsible for all of this. The Graduate School **acts on** the recommendation of the Department. The Chairperson **acts on** the recommendation of the Graduate Director. The Graduate Director **acts on** the recommendation of the advisor. Daryl Scott was my advisor. **I don't even know the Graduate Director – never met her a day in my life.** Therefore, this decision to deny me was the direct relationship of Edna Medford (the Chairperson) and Daryl Scott. Edna Medford, **acted on** what Daryl Scott **TOLD HER** to do . . . . I don't know **what kind of POWER Daryl Scott has** in the History Department to get everyone against me . . . . These people **know they are WRONG, but will not admit to it**. That's why I **am asking the court for my degree so I can go on with my life and career**.

*Id.* at 3-4 (emphasis in original).

A. Dismissal Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A plaintiff need only provide a "short and plain statement of [her] claim showing that [she is] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in plaintiff's favor, and it should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)). Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, the Court need not accept inferences drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning*, 292 F.3d at 242.

B. Title IX[5]

None of plaintiff's pleadings asks the Court to order the University to grant her application for admission; instead, she repeatedly insists that she should be granted a Ph.D immediately. In an abundance of caution, though, the Court will, as the University did, assume that plaintiff meant to bring a claim challenging the denial of her application for readmission under Title IX.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "The Supreme Court [recognizes] an implied private right of action for money damages pursuant to Title IX for a plaintiff who has been the victim of discrimination on the basis of . . . her sex by an *educational institution* that receives federal funding." *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 220 (D.D.C. 2012) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 725 (1979)) (emphasis added). The parties acknowledge that the University receives federal funds and that plaintiff has been denied readmission to its graduate school. *See* Compl. at 2, 4; Def.'s Mem. at 7. And because the University is subject to Title IX, it "may not 'discriminate on the basis of sex in the recruitment and admission of students.'" Def.'s Mem. at 5 (quoting 34 C.F.R. § 106.23(a)).

"The threshold issue for any Title IX claim is whether there has been discrimination based on sex." *Delbert v. Duncan*, 923 F. Supp. 2d 256, 261 (D.D.C. 2013) (citing *Armour v. Bd. of Educ. of Prince George's Cnty.*, No. 11-2855, 2012 WL 3257653, at *4 (D. Md. Aug. 6, 2012)),

---

[5] As the University's counsel notes, *see* Def.'s Mem. at 6 n.1, service of process has not been made on the ten individual defendants. Even if these defendants had been served, none is the proper defendant to a Title IX claim. "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

*aff'd*, No. 13-5135, 2013 WL 6222987 (D.C. Cir. Nov. 14, 2013) (per curiam). The University argues that plaintiff fails to "plead facts which would establish that the decision to deny her admission was in any way related to her gender[.]" Def.'s Mem. at 6. The Court agrees.

It is apparent that plaintiff is female. Missing from the complaint, however, are any factual allegations to link the University's decision to deny her readmission to her gender. Rather, plaintiff attributes the University's decision to Scott's "personal vendetta against [her]," Compl. at 5, as evidenced by his refusal to act as her advisor and his influence over other faculty members such that they, too, refused to act as her advisor. *See id.* at 2-5.

Contrary to plaintiff's suggestions, *see, e.g.,* 1st Resp. at 1; 3rd Resp. at 3, it is not incumbent upon the University on a Rule 12(b)(6) motion to explain or defend its reasons for denying plaintiff readmission to its graduate program. Rather, it is plaintiff's burden to state a plausible claim under Title IX. Here, absent allegations that the University's decision was based on plaintiff's gender, the claim fails. *See Delbert*, 923 F. Supp. 2d 261 (dismissing Title IX claim where the "plaintiff's mere[ly] mention[s] his sex" without "factual allegations set forth in the complaint to suggest discrimination on this basis").

C. Defamation

Like the University, *see* Def.'s Mem. at 8, the Court will construe the complaint liberally to include defamation and emotional distress claims. *See* Compl. at 4.

To state a claim of defamation under District of Columbia law, a plaintiff must allege:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law

9

> irrespective of special harm or that its publication caused the plaintiff special harm.

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (internal quotation marks and citations omitted). A statement is defamatory "if it tends to injure plaintiff in [her] trade, profession or community standing, or lower [her] in the estimation of the community." *Howard Univ. v. Best*, 484 A.2d. 958, 988 (D.C. 1984); *see Moldea v. New York Times Co.*, 15 F.3d 1137, 1143 (D.C. Cir. 1994) (finding "allegation that a journalist and author is 'sloppy,' or that his book's portrayals of central events are incorrect or misleading" is capable of defamatory meaning in that it "would tend to injure [plaintiff] is his chosen profession, investigative journalism"). "[T]he interest protected by the law of defamation is that in reputation and it is therefore essential to liability . . . that the defamation be communicated to some one other than the person defamed." *Washington Annapolis Hotel Co. v. Riddle*, 171 F.2d 732, 737 (D.C. Cir. 1949) (citations omitted).

Plaintiff's complaint is devoid of any facts to support a defamation claim. It does not identify any particular statement made by the University or by any of the individual defendants that was false or defamatory. Nor does the complaint allege that any defendant published a false and defamatory statement to a third party, either negligently or intentionally.

The Court identifies only one potential source of a defamation claim – mention of the plaintiff's "possible plagiarism in 2010." 1st Resp. at 1. If the Court were to construe this statement as a factual allegation, it still would not make out a defamation claim. Insofar as plaintiff "was honest" when "confronted with plagiarism," Addendum at 2 (emphasis omitted), she does not allege that the suggestion or accusation of plagiarism is false. Furthermore, even if the Court were to assume that the suggestion or accusation of plagiarism within a community of academics is

defamatory, there are no factual allegations in the complaint that any of the defendants ever made such a statement and published it to a third party.[6]

The Court concludes that the complaint fails to state a defamation claim, and the University's motion to dismiss the claim therefore will be granted.

D. Intentional Infliction of Emotional Distress

Based on the plaintiff's demand for compensation for "pain and suffering for emotional distress," Compl. at 4, the Court treats the complaint as if it brings a tort claim for intentional infliction of emotional distress ("IIED") arising from the University's decision to deny the plaintiff readmission. A claim of intentional infliction of emotional distress must be predicated upon "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." *Halcomb v. Woods*, 610 F. Supp. 2d 77, 80 (D.D.C. 2009) (citing *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)). "To establish the required degree of outrageousness [to sustain an IIED claim], the plaintiff must allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997) (internal citations and quotation marks omitted). This "very demanding standard" is "only infrequently met." *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997). "[M]ere insults, indignities, threats, annoyances,

---

[6] According to the University's counsel, plaintiff herself "admitted in correspondence she sent to [the Office of Civil Rights], the Dean's Office at Howard University, and a colleague at [City University of New York] that she had engaged in plagiarism in the past, and that her dissertation proposal[] submitted in 2010 contained a number of plagiarized passages." Def.'s Mem. at 9 n.4.

petty oppressions, or other trivialities" cannot support an IIED claim. *Halcomb*, 610 F. Supp. 2d at 80 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

It cannot be said that the University's decision to deny plaintiff's readmission, based either on plaintiff's credentials, *see* Compl. at 2, or her "lack of progress and possible plagiarism," 1st Resp. at 1, rises to the level of extreme or outrageous conduct. While plaintiff may have experienced pain and suffering as a result of her inability to complete her graduate studies at the University, *see, e.g.,* Compl. at 4, 6, she fails to allege facts to establish the University's liability on an IIED claim.

The Court concludes that the complaint fails to state an IIED claim, and the University's motion to dismiss the claim therefore will be granted.

III. CONCLUSION

Plaintiff's complaint fails to state Title IX, defamation or IIED claims and, therefore, the University's motion to dismiss will be granted. An Order is issued separately.

/s/
AMY BERMAN JACKSON
United States District Judge

DATE: July 19, 2016